David P. Claiborne, ISB # 6579
**SAWTOOTH LAW, PLLC**
1101 W. River St., Ste 110
P.O. Box 7985
Boise, ID 83707
Telephone: (208) 629-7447
Facsimile: (208) 629-7559
david@sawtoothlaw.com

*Attorneys for Plaintiffs Hans L. and*
*Mary S. Carstensen III and Duke*
*Rohlen and Kendall Simpson Rohlen,*
*as Trustees of the Rohlen Revocable Trust*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Hans L. and Mary S. Carstensen III and Duke Rohlen and Kendall Simpson Rohlen, as Trustees of the Rohlen Revocable Trust,<br><br>        Plaintiffs,<br><br>  vs.<br><br>United States of America,<br><br>        Defendant. | Case No. 4:18-CV-515-CWD<br><br>**STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF CLAIMS** |

        This Stipulation for Compromise Settlement and Release of Claims (the "Stipulation") is between Hans L. and Mary S. Carstensen III, Duke Rohlen and Kendall Simpson Rohlen, as Trustees of the Rohlen Revocable Trust (collectively "Plaintiffs") and the United States of America and the United States Forest Service (collectively the "United States").

        A.      WHEREAS, Plaintiffs filed this action against the United States seeking to quiet title to a right-of-way for a diversion structure and ditch, and other appurtenances generally known as the S41 Diversion Canal, partially located on National Forest System ("NFS") land within what was designated as the Sawtooth National Recreation Area in 1974 and those portions of the Ditch located on NFS land are more particularly located in Section 32, Township 9 North, Range 14 East, Boise Meridian and Section 5, Township 8 North, Range 14 East, Boise Meridian, Custer County, Idaho.  The claims are more specifically set forth in Plaintiffs' Complaint (ECF No. 1).

**S41 STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF CLAIMS**
**PAGE 1 OF 12**

B.　　WHEREAS, the parties have reached an agreement to settle the matters associated with the Right of Way for the S41 Diversion Canal.

C.　　WHEREAS, this Stipulation finalizes the terms of this Agreement and is made in consideration of the mutual promises contained herein.

D.　　WHEREAS, this Stipulation and Agreement settles and compromises the entirety of the claims that are the subject of this lawsuit.

NOW, THEREFORE, through their undersigned counsel, Plaintiffs and the United States hereby stipulate and agree as follows:

1. **Right of Way**.  Plaintiffs claim a right-of-way for the S41 Diversion Canal pursuant to the Act of July 26, 1866, Ch 262 § 9, 14 Stat 1, 253, codified at 43 U.S.C. § 661 (collectively referred to as the 1866 Act), on and across NFS land as described and depicted on the land survey plat attached and fully incorporated into this Stipulation as **Figure 1** (hereinafter the "Right-of-Way").  **Figure 2** attached hereto is a legal description of the S41 Diversion Canal on and across NFS land.  The Right-of-Way encompasses the following water conveyance facilities located on NFS land within

   Boise Meridian, Idaho
   T. 9 N., R. 14 E.
   Section 32, and
   T. 8 N., R. 14 E.
   Section 5,

   Custer County, Idaho:

   a. A historic diversion on the Salmon River, commonly known as S41, being a rock wall and channel extending into the river which feeds a ditch to a concrete headwall, approximately 15 feet wide, 5 feet tall, with concrete overflow structure, measuring device, fish screen and steel head gate.

   b. An open, earthen ditch, approximately 6-8 feet wide at the bottom, 6-11 feet wide at the top that carries water at a nominal depth of 2-4 feet as depicted on Figure 1 and described in Figure 2.

   c. If the ditch and diversion structure are located substantially as described herein on the date of execution hereof, the actual centerline of the ditch and location of the diversion structure are hereby deemed accepted by the Parties as the true location of the easement granted.

2. **Disclaimer**.  In accordance with 28 U.S.C. § 2409a(e), the United States hereby disclaims all interest adverse to the Right-of-Way.  The Right-of-Way hereby disclaimed is for a permanent, no fee easement that can only be terminated in an appropriate judicial

proceeding, through voluntary relinquishment, or by abandonment in accordance with State law.

3. **Water Rights**. The water rights that are owned by Plaintiffs and that are exercised using the facilities within the Right-of-Way were decreed in the Snake River Basin Adjudication (SRBA) and are shown in the following table and are hereinafter referred to as the "Water Rights:"

| IDWR Water Right No. | Priority Date | Uses | cfs | Season of Use |
|---|---|---|---|---|
| 71-2063 | 10/05/1933 | Irrigation | 1.66 | April 1 to November 1 |
| 71-2082 | 03/03/1954 | Irrigation | 2.52 | May 1 to October 31 |
| 71-4016 | 05/01/1954 | Irrigation | 15.09 | May 1 to October 31 |
| 71-4037 | 10/05/1933 | Irrigation | 9.17 | May 1 to October 31 |

4. **Scope of the Right-of-Way**. The scope of the Right-of-Way is what is reasonable and necessary to operate and maintain the S41 Diversion Canal and diversion structure at its historic capacity and with such personnel and such equipment as commonly used or is reasonably adapted to that work, as more particularly defined by applicable federal or State law.

5. **Use**. Absent additional authorization by the Forest Service, the Right-of-Way may only be used:

   a. to divert, measure, and convey the Water Rights pursuant to their decrees and Idaho law, during the season of uses of the Water Rights set forth in the respective water right decrees; and

   b. for routine inspection, operation, maintenance and repair of facilities within the Right-of-Way.

6. **Other Authorizations**. The United States reserves the right to use, or permit others to use, the area within the Right-of-Way, provided such uses do not materially interfere, conflict, or are not inconsistent with the Right-of-Way or the operation, maintenance, or repair of the improvements within the Right-of-Way, and provided further the United States shall not grant to others the right to the use of Plaintiffs' improvements and facilities within the Right-of-Way.

7. **Access Routes**.  The Right-of-Way includes reasonable access along the banks of the S41 Diversion Canal (also called "the Ditch") beginning at the point of diversion from the Salmon River and continuing for the length of the Ditch on both sides.  The Right-of-Way includes access along the banks of the Ditch by foot, mounted livestock, pack animals, and motor vehicles less than 102 inches in width.

    In addition to access along the banks of the Ditch, Plaintiffs are entitled to adequate access across NFS land for reasonable use and enjoyment of the Right-of-Way.  Adequate access means a route and method of access to non-Federal land that provides for reasonable use and enjoyment of the non-Federal land consistent with similarly situated non-Federal land and that minimizes damage or disturbance to National Forest System lands and resources. Use of these access routes shall be limited to serving the purposes of the Right-of-Way for routine operation and maintenance of the Ditch and its improvements.

    The Forest Service will not deny written authorization for adequate motor vehicle access outside of the Right-of-Way for any activity that is reasonable and necessary for routine operation and maintenance of the facilities and improvements within the Right-of-Way.  Over-snow motor vehicles may be used in accordance with federal laws and regulations, which do not currently require written authorization.

    Plaintiffs do not waive any claim that the right or means of access by way of access routes outside of the Right-of-Way, but not along the banks of the Ditch, are within the scope of the 1866 Act.  Reciprocally, the Forest Service does not waive any defense to such a claim.

8. **Routine Operation and Maintenance**.  The Right-of-Way confers to Plaintiffs the right and obligation to do all things that are reasonable and necessary to access, inspect, operate, maintain, and repair the improvements and facilities within the Right-of-Way, and to occupy the Right-of-Way without interference with such personnel and equipment as reasonably needed for same.  The Right-of-Way shall include, but not be limited to, the right to enter the land across which the Right-of-Way extends, for the purposes of inspecting, cleaning, maintaining and repairing the improvements and facilities, and with such equipment as is commonly used, or is reasonably adapted to that work.  Plaintiffs agree to operate and maintain the improvements and facilities and use the authorized easement in accordance with applicable Federal, State and local laws, regulations and standards.

    The following actions are routine operation and maintenance activities within the scope of the Right-of-Way that the Forest Service has determined are exempt from permit requirements under 36 C.F.R. § 251.50(e)(3):

    a. Routine inspection.  Generally, the water conveyance facility is inspected annually for maintenance and cleaning needs at the beginning of the irrigation season.  Additional inspections are conducted, as needed, to ensure water continues to flow along the ditch.

    b. Routine cleaning and bank stabilization.  Inspections may identify the need for bank stabilization, removal of silt from the ditch channel, and/or the removal of debris and

vegetation that inhibits operation of the facility. Acceptable tools for this routine operation and maintenance work include powered and non-powered, mechanized and non-mechanized, tools, equipment and other apparatus not more than 102 inches in width. The removed materials will not be placed on NFS lands more than 25 feet from the ditch bank, and when necessary shall be removed from the area in a mutually agreeable manner, provided that dirt and sediment removed from the ditch to maintain the channel need not be removed. This activity shall be conducted in a manner that minimizes the spread of noxious weeds. For instance, acceptable tools shall be cleaned prior to use. For temporary bank stabilization, sandbags may be temporarily placed alongside the facility to ensure adequate water is diverted to the diversion structure and along the ditch.

c. Routine maintenance and repair. Any type of work on the diversion, headgate, fish screens or measuring device(s), including adjustment, installation, maintenance, repair, or replacement and removing obstructions from the improvements.

d. Prior to engaging in any activity that is not listed above, Plaintiffs shall notify the Forest Service in order to determine if the proposed activity constitutes routine operation and maintenance within the scope of the Right-of-Way, and to ensure that NFS land is not unreasonably or unnecessarily damaged. The Forest Service will require that a special use authorization be obtained for activities that it determines are not routine operation and maintenance or not within the scope of the Right-of-Way.

e. Significant changes in location or alignment, significant increases in the area occupied, construction of new access roads, reconstruction of facilities and enlargements and extensions that increase capacity of the system or include new land will require application and issuance of an authorization from the Forest Service.

9. **Standard of Care.** Plaintiffs shall conduct the routine operation, maintenance, and repair activities set forth in paragraph 8 above in accordance with the following standards:

a. Regularly inspect and reasonably maintain the Right-of-Way to avoid unreasonable or unnecessary damage to NFS land or property, and to maintain the function of the Right-of-Way;

b. Regulate ditch flows and water diversion so that a reasonable freeboard is maintained above the water line. Ditch flows shall be no more water than authorized by the Water Rights;

c. Revegetate or otherwise stabilize exposed soil;

d. Control erosion and gullying within the Right-of-Way resulting from the operation and maintenance of the improvements (as opposed to erosion or gullying caused by the presence of natural springs);

e.  Avoid introduction of noxious weeds, as identified by the Forest Service and the Custer County weed list by taking reasonable steps to avoid introduction of noxious weed seeds on NFS land, including cleaning equipment of material that could carry noxious weed seeds before entering NFS land, and abate noxious weeds caused by or introduced by operation and maintenance of the improvements within disturbed areas.

f.  Plaintiffs will not use fire or herbicides on the Right-of-Way except as permitted in writing by the Forest Service.

10. **Additional Work.**  Except to the extent exempted from Forest Service permit requirements for the protection of life and property in emergencies (36 C.F.R. § 251.50(b)), Plaintiffs agree to consult with the Forest Service prior to performing activities outside the scope of the easement as set forth in Sections 8 and 9 above to ensure protection of the servient federal land and to determine whether additional Forest Service authorization is required.  The Forest Service shall not unreasonably delay, unreasonably condition, or withhold such authorization if it would preclude or interfere with the use of the Right-of-Way for the purposes granted.

11. **Transfer and Ownership.**  The Right-of-Way is an appurtenance to the Water Rights, such that corresponding percentage ownership of the Right-of-Way automatically transfers with the Water Rights.  No approval is required from the Forest Service for the Right-of-Way to transfer to successors-in-interest.  However, within 60-days of any transfer of the Right-of-Way, or any portion thereof, the new owner should provide appropriate contact information to the Sawtooth National Recreation Area District Office of the Forest Service, including name, telephone number, mailing address, and electronic mail address, and Plaintiffs shall so advise their direct grantees.  The terms of this Stipulation shall be binding upon Plaintiffs and their successors-in-interest to the Water Rights.

12. **Cost and Fees**.  The parties shall bear their own costs, expenses, and attorney fees.

13. **Court Order Confirming Disclaimer and Dismissing Case**.  The parties will submit a joint motion to the Court that includes a copy of this Stipulation and a request that it issue an order confirming the United States' disclaimer in accordance with the Quiet Title Act, 28 U.S.C. § 2409a(e).  The parties agree that a court order confirming the United States' disclaimer is the equivalent of an order quieting title to the claimed Right-of-Way and defining its scope, and shall be recordable as an order confirming Plaintiffs' title to the Right-of-Way and its scope as set forth in this Stipulation.  The Court's Order confirming the United States' disclaimer should include a statement to this effect.  The parties will also request that at the same time the Court enters an Order confirming the United States' disclaimer that it should also dismiss the case with prejudice with each party bearing its own costs and fees.  The parties will submit a proposed order along with their joint motion that includes the requested language. If the Court declines to issue an Order confirming the disclaimer set forth herein, this Stipulation shall be void.

14. **Headings**.  All headings used herein are for convenience only and are of no meaning in the interpretation or effect of this Stipulation.

15. **No Precedent**.  This Stipulation is entered into by the parties for the purpose of compromising a disputed claim and avoiding the expenses and risks of further litigation.  It is not an admission of liability to any fact, claim, or defense in any issue in this action. This Stipulation has no precedential value and shall not be used as evidence regarding the merits of the claims of either party in this action. Any Order issued pursuant to this Stipulation, and this Stipulation to the extent incorporated by reference in such Order, may be used solely as evidence of the existence of and terms and conditions associated with the Right-of-Way.

16. **Entirety of Settlement**.  This Stipulation represents the entirety of Plaintiffs' and the United States' commitments regarding settlement.  This Stipulation supersedes and cancels all prior negotiations and understandings of any kind with respect to the subject matter hereof and contains all of the terms and provisions of the agreement between the parties with respect to the subject matter hereof.  All terms of this stipulation are contractual in nature.  The Stipulation shall not be amended, supplemented or abrogated other than by a written instrument signed by each party, or their authorized representatives.  The parties agree that this Stipulation may be signed in counterparts.

17. **Recording**.  Plaintiffs shall record the Court Order confirming the United States' disclaimer in the real property records of Custer County, Idaho, together with this Stipulation to the extent incorporated therein by reference.

18. **Authorization**.  The persons signing this Stipulation warrant and represent that they possess full authority to bind the parties on whose behalf they are signing.

    **THIS STIPULATION** shall inure to and be binding upon the parties, their successors, and assigns.

    Dated this 1st day of February, 2021.


**SAWTOOTH LAW OFFICES, PLLC**

 

_____
David P. Claiborne
*Attorneys for Plaintiffs*

BART M. DAVIS
United States Attorney


_____
Christine G. England
Assistant United States Attorney
*Attorneys for Defendant*

# FIGURE 1



A Map Showing
Sawtooth Valley Irrigation 2019
S41

1 inch = 300 feet

ALPINE ENTERPRISES INC.

PO Box 2037
660 Bell Drive, Unit1
Ketchum, Idaho
208-727-1988

June 2019

**S41 STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF CLAIMS
PAGE 8 OF 12**

**FIGURE 2**

A ditch consisting of four reaches, originating from a diversion on the Salmon River as identified by the Idaho Department of Water Resources as S41, and situated in section 5, township 8 north, range 14 east, and section 32, township 9 north, range 14 east, Boise Meridian, Custer County, Idaho, as shown on Records of Survey #259709, #259710, #259711, #259712, #259713 and #259714, filed with the Custer County Recorder, Challis, Idaho, the center line of said ditch being more particularly described as follows:

**Reach 1**

**COMMENCING** at the one-quarter section corner of sections 4 and 5, T. 8 N., R. 14 E., B.M., an iron pipe, 2½ inches in diameter, protruding 1 inch from ground, in a 2½ foot mound of stone, with a standard B.L.M. brass cap marked:



thence North 59°47'32" West, a distance of 1558.7 feet more or less, to the centerline of Ditch S41, at its headgate, and the POINT OF BEGINNING of Reach 1;

**THENCE** on the center line of said Ditch S41, Reach 1, the following 134 courses:

1. North 20°54' West, a distance of 157.2 feet;
2. North 30°28' West, a distance of 162.2 feet;
3. North 62°25' West, a distance of 227.6 feet;
4. North 16°35' West, a distance of 28.8 feet;
5. North 9°24' West, a distance of 49.6 feet;
6. North 15°09' West, a distance of 71.9 feet;
7. North 14°54' West, a distance of 38.6 feet;
8. North 26°11' West, a distance of 56.8 feet;
9. North 40°34' West, a distance of 62.5 feet;
10. North 47°54' West, a distance of 65.1 feet;
11. North 43°49' West, a distance of 30.6 feet;
12. North 61°06' West, a distance of 46.4 feet;
13. North 71°15' West, a distance of 97.3 feet;
14. North 69°23' West, a distance of 50.7 feet;
15. North 61°44' West, a distance of 54.0 feet;
16. North 58°48' West, a distance of 96.6 feet;
17. North 59°18' West, a distance of 36.8 feet;
18. North 63°15' West, a distance of 80.5 feet;
19. North 20°15' West, a distance of 29.0 feet;
20. North 14°17' West, a distance of 31.8 feet;
21. North 51°13' West, a distance of 38.3 feet;
22. North 57°36' West, a distance of 25.3 feet;
23. North 22°40' West, a distance of 32.7 feet;
24. North 4°57' West, a distance of 26.6 feet;
25. North 4°57' East, a distance of 22.3 feet;
26. North 30°49' East, a distance of 69.6 feet;
27. North 21°03' East, a distance of 48.9 feet;
28. North 6°59' West, a distance of 115.1 feet;
29. North 32°05' West, a distance of 60.2 feet;
30. North 33°32' West, a distance of 40.4 feet;
31. North 26°33' West, a distance of 25.1 feet;
32. North 39°12' West, a distance of 57.7 feet;
33. North 14°12' West, a distance of 30.5 feet;
34. North 1°35' East, a distance of 24.0 feet;
35. North 6°16' East, a distance of 53.9 feet;
36. North 2°23' West, a distance of 41.3 feet;
37. North 12°12' West, a distance of 45.2 feet;
38. North 18°48' West, a distance of 45.7 feet;
39. North 24°07' West, a distance of 39.0 feet;
40. North 36°09' West, a distance of 38.7 feet;
41. North 48°10' West, a distance of 81.9 feet;
42. North 44°55' West, a distance of 54.0 feet;
43. North 32°34' West, a distance of 29.0 feet;
44. North 21°12' West, a distance of 33.9 feet;
45. North 8°53' West, a distance of 58.9 feet;
46. North 33°29' West, a distance of 43.0 feet;

47. North 18°37' West, a distance of 28.7 feet;
48. North 6°07' East, a distance of 132.3 feet;
49. North 12°59' East, a distance of 110.3 feet;
50. North 2°23' East, a distance of 59.0 feet;
51. North 0°13' East, a distance of 30.4 feet;
52. North 5°44' West, a distance of 46.7 feet;
53. North 15°17' West, a distance of 32.0 feet;
54. North 26°37' West, a distance of 19.9 feet;
55. North 41°11' West, a distance of 63.7 feet;
56. North 45°06' West, a distance of 39.9 feet;
57. North 43°52' West, a distance of 38.1 feet;
58. North 31°28' West, a distance of 30.6 feet;
59. North 7°28' East, a distance of 73.5 feet;
60. North 19°10' West, a distance of 15.7 feet;
61. North 40°21' West, a distance of 20.2 feet;
62. North 54°06' West, a distance of 44.4 feet;
63. North 61°22' West, a distance of 37.8 feet;
64. North 67°25' West, a distance of 61.3 feet;
65. North 75°08' West, a distance of 40.3 feet;
66. North 78°30' West, a distance of 63.0 feet;
67. North 76°59' West, a distance of 20.3 feet;
68. North 48°02' West, a distance of 18.2 feet;
69. North 20°51' West, a distance of 53.1 feet;
70. North 23°26' West, a distance of 119.3 feet;
71. North 2°57' East, a distance of 48.2 feet to the Junction with Ditch S41, Reach 3;
72. North 15°15' East, a distance of 34.1 feet;
73. North 37°30' East, a distance of 35.6 feet;
74. North 26°45' East, a distance of 30.9 feet;
75. North 30°11' East, a distance of 36.5 feet;
76. North 29°19' East, a distance of 49.1 feet;
77. North 28°27' East, a distance of 69.7 feet;
78. North 23°17' East, a distance of 87.9 feet;
79. North 12°13' East, a distance of 13.4 feet;
80. North 1°54' East, a distance of 27.2 feet;
81. North 6°40' West, a distance of 65.2 feet;
82. North 5°12' West, a distance of 43.4 feet;
83. North 8°47' East, a distance of 52.1 feet;
84. North 3°51' East, a distance of 30.1 feet;
85. North 6°26' West, a distance of 53.8;
86. North 13°45' East, a distance of 33.4 feet;
87. North 25°11' East, a distance of 31.8 feet;
88. North 14°39' East, a distance of 69.8 feet;
89. North 13°44' East, a distance of 89.3 feet;
90. North 8°30' East, a distance of 56.3 feet;
91. North 4°45' East, a distance of 46.1 feet;
92. North 3°53' East, a distance of 28.8 feet;
93. North 1°58' East, a distance of 44.0 feet;
94. North 3°01' West, a distance of 22.8 feet;
95. North 8°44' West, a distance of 23.1 feet;
96. North 31°28' West, a distance of 62.6 feet;
97. North 24°17' West, a distance of 38.1 feet;
98. North 9°13' West, a distance of 27.4 feet;
99. North 7°45' East, a distance of 21.2 feet;
100. North 15°32' East, a distance of 60.9 feet;
101. North 17°30' East, a distance of 31.3 feet;
102. North 17°40' East, a distance of 43.5 feet;
103. North 25°25' East, a distance of 40.4 feet;
104. North 39°59' East, a distance of 45.2 feet;
105. North 43°05' East, a distance of 33.3 feet;
106. North 59°44' East, a distance of 48.0 feet;
107. North 66°02' East, a distance of 38.8 feet;
108. North 57°23' East, a distance of 25.4 feet;
109. North 77°52' East, a distance of 23.6 feet;
110. North 51°03' East, a distance of 27.4 feet;
111. North 17°52' East, a distance of 34.7 feet;
112. North 31°49' East, a distance of 58.4 feet;
113. North 57°17' East, a distance of 21.1 feet;
114. North 20°14' East, a distance of 28.4 feet;
115. North 21°32' West, a distance of 54.7 feet;
116. North 6°07' West, a distance of 26.5 feet;
117. North 3°28' East, a distance of 97.8 feet;
118. North 8°41' West, a distance of 97.0 feet;
119. North 5°11' East, a distance of 89.7 feet;
120. North 1°00' West, a distance of 90.4 feet;
121. North 4°09' East, a distance of 66.7 feet;
122. North 10°29' East, a distance of 35.3 feet;
123. North 19°44' East, a distance of 43.7 feet;
124. North 17°03' West, a distance of 48.5 feet;
125. North 8°03' East, a distance of 116.9 feet;
126. North 11°52' East, a distance of 54.8 feet;
127. North 5°04' East, a distance of 45.1 feet;
128. North 25°28' East, a distance of 42.9 feet;
129. North 34°57' East, a distance of 31.3 feet;
130. North 38°40' East, a distance of 53.1 feet;
131. North 42°05' East, a distance of 67.8 feet;
132. North 44°59' East, a distance of 64.4 feet;
133. North 45°03' East, a distance of 115.7 feet;
134. North 54°28' East, a distance of 45.6 feet;

To the west ROW line of Highway 75, and the POINT OF TERMINATION. From this point, the one-quarter section corner of sections 29 and 32, T. 9 N., R. 14 E., B.M., bears North 30°15'24" West, a distance of 1563.1 feet.

**Reach 2**

**COMMENCING** at the one-quarter section corner of sections 4 and 5, T. 8 N., R. 14 E., B.M., an iron pipe, 2½ inches in diameter, protruding 1 inch from ground, in a 2½ foot mound of stone, with a standard B.L.M. brass cap marked:



T8N R14E
1/4
|
S5|S4
|
1972

Thence North 65° 25' West, a distance of 1340.8 feet more or less to the beginning of the natural diversion of the Salmon River for Ditch S41, which point is the **TRUE POINT OF BEGINNING;**

**THENCE** on the center line of the natural diversion of Ditch S41, the following 5 courses:

1.  North 32° 48' West, a distance of 65.7 feet;
2.  North 15° 05' East, a distance of 34.2 feet;
3.  North 25°46' West, a distance of 115.5 feet;
4.  North 66° 58' West, a distance of 17.8 feet
5.  North 31° 59' West, a distance of 38.4 feet

To the headgate of Ditch S41, the beginning of Reach 1, and the POINT OF TERMINATION of Reach 2.

**Reach 3**

**COMMENCING** at the C-S 1/16 section corner of section 32, T. 9 N., R. 14 E., B.M., a 2½ inch diameter aluminum pipe, protruding 5 inches from the ground with standard U.S.F.S. aluminum cap marked:

C
S 1/16 | S32
C

PLS 883
1979

thence South 0°24'05" West on the north-south center line of section 32, a distance of 129.4 feet; thence South 89°35'55" West, a distance of 5.6 feet to the junction of the centerlines of Ditch S41, Reach's 1 and 3, and the POINT OF BEGINNING;

**THENCE** on the center line of Ditch S41, Reach 3, the following 8 courses:

1. North 0°35' West, a distance of 24.7 feet;
2. North 14°56' East, a distance of 12.9 feet;
3. North 13°34' West, a distance of 4.7 feet;
4. North 35°14' West, a distance of 13.7 feet to the junction of Ditch S41, Reach 4;
5. North 12°13' West, a distance of 4.7 feet;
6. North 1°14' West, a distance of 13.1 feet;
7. North 23°16' West, a distance of 5.7 feet;
8. North 9°47' West, a distance of 54.2 feet;

To the East-West centerline of the SW1/4 of section 32, and the POINT OF TERMINATION. From this point the C-S 1/16 section corner of section 32 bears South 89°57'52" East, a distance of 23.4 feet.

**Reach 4**

**COMMENCING** at the aforementioned C-S 1/16 section corner of section 32, thence South 0°24'05" West on the north-south center line of said section 32, a distance of 76.3 feet, thence South 89°35'55" West, a distance of 11.2 feet to the junction of the centerlines of Ditch S41, Reach's 3 and 4, and the POINT OF BEGINNING;

**THENCE** on the center line of Ditch S41, Reach 4, the following 3 courses:

1. North 9°34' East, , a distance of 18.8 feet;
2. North 3°42' West, a distance of 7.4 feet;
3. North 1°37' East a distance of 50.5 feet,

To the East-West centerline of the SW1/4 of section 32, and the POINT OF TERMINATION. From this point the C-S 1/16 section corner of said section 32 bears South 89°57'52" East, a distance of 6.6 feet.

**The bearings** shown herein are based the line between the south 1/16 corner of sections 8 and 9 and the quarter corner of sections 8 and 9, T. 8 N., R. 14 E., B.M. with a bearing of North 0°00'41" West. All distances stated are in U.S. Survey Feet and all bearings are referenced to the true meridian.

Note that this description is intended to match the centerlines depicted on Records of Survey #259709, #259710, #259711, #259712, #259713 and #259714, filed with the Custer County Recorder, Challis, Idaho. In the event of a discrepancy between this instrument and said Record of Survey plat, it is intended that the conditions on the plat shall control and that the courses listed in this instrument shall yield to the plat.

**STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF CLAIMS PAGE 12 OF 12**